IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF:<br><br>JOEL BERNARD FROST,<br><br>        Debtor(s).<br><br>F & M BANK,<br><br>        Plaintiff(s)<br> vs.<br><br>JOEL BERNARD FROST,<br><br>        Defendants(s). | CASE NO. BK19-41945<br><br>CHAPTER 13<br><br>ADV. NO. A19-4054-TLS<br><br><br><br>ORDER |

This adversary proceeding came before the court for trial on October 20, 2020. Matthew Rusch appeared for Plaintiff F & M Bank and John Rouse appeared for Defendant Joel Frost. This Order contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

For the reasons discussed below, the Court finds for the Defendant and dismisses the Complaint.

## BACKGROUND

F & M Bank filed this adversary complaint to except a debt from discharge under 11 U.S.C. § 523(a)(2). The Defendant owned two welding businesses in Falls City, Nebraska: K & F Welding, LLC, and Frost-Tec Welding, Manufacturing, and Fabrication, LLC. In 2018, he obtained a series of loans from F & M Bank for Frost-Tec totaling approximately $170,000. In return, he gave the bank a security interest in Frost-Tec's property, allegedly assuring the bank it would have a first-priority lien. The bank alleges the Defendant subsequently executed documents to provide security interests to his father, Neal Frost, without the bank's knowledge, and failed to disclose that some of the collateral belonged to K & F instead of Frost-Tec. The bank claims it would not have provided the loans or extended credit to Frost-Tec but for the Defendant's representations regarding the collateral available to the bank, and the debt should not be discharged under § 523(a)(2)(A) and (B).

The Defendant asserts he did not intend to defraud the bank and that the lien priority problem arose from a misunderstanding. Specifically, the Defendant intended Frost-Tec to be a successor to K & F, which had an outstanding loan secured by its assets. F & M Bank required that loan to be paid off before it would loan money to Defendant and Frost-Tec. Defendant had enlisted Neal Frost to pay off K & F's loan with its lender. Defendant gave Neal Frost a security interest in all of the K & F assets to secure his loan to pay off the prior lender. Later, a priority dispute apparently arose between Neal Frost and F & M Bank. This came to light in late 2018

when some of the equipment used by Frost-Tec was destroyed or damaged by a power surge resulting in disputes over insurance proceeds. Ultimately, Defendant defaulted on the F & M Bank loans as well as the loan from Neal Frost. Defendant signed over to Neal Frost all of his rights in K & F Welding, LLC. Neal Frost and F & M each claimed the priority security interest in the equipment collateral. Neal Frost took control of the equipment because it was in a building he controlled as the building was owned by K & F. The dispute over rights to the equipment is now the subject of a pending action in state court between F & M and Neal Frost. The Defendant has surrendered any remaining interests in the equipment and the insurance claim on the damaged equipment to F & M Bank. The issue in this adversary proceeding is whether the bank's deficiency claim, if any, should be discharged.

### *FINDINGS OF FACT*

The parties agree on the following facts in their Joint Pretrial Statement:

1. On November 21, 2019, Joel Frost filed a voluntary petition for relief under Chapter 7.

2. On March 4, 2020, Frost's bankruptcy case was converted to Chapter 13 upon his motion.

3. No Chapter 13 plan has yet been confirmed.

4. Frost has not been granted a discharge in his bankruptcy.

5. F & M Bank is a Nebraska chartered bank with its principal place of business in Nebraska.

6. On or about May 22, 2013, Frost and Jeremy Kearney formed an entity named K & F Welding, LLC ("K & F") for purposes of operating a welding business in the Falls City, Nebraska, area. Frost and Jeremy Kearney were the original members of K & F.

7. On or about November 21, 2013, Frontier Bank (formerly known as Richardson County Bank and Trust) filed a Uniform Commercial Code (UCC) financing statement against all business personal property and equipment of K & F. Frontier Bank subsequently filed additional UCC financing statements against all business personal property and equipment of K & F.

8. Upon information and belief, Frontier Bank provided business financing for K & F on or about November 21, 2013.

9. On or about December 16, 2016, a Certificate of Organization was filed with the State of Nebraska for Frost-Tec Welding, Manufacturing, and Fabrication, LLC ("Frost-Tec"). Frost was identified as the sole owner.

10. On or about January 29, 2018, Frost, acting on behalf of Frost-Tec, initiated a banking relationship with F & M Bank on behalf of Frost-Tec. On that date, Frost signed documents to open an account at F & M Bank for Frost-Tec, a standard business account. On February 16, 2018, Frost-Tec opened a payroll account at F & M Bank.

11. On or about February 16, 2018, Frost initiated a banking relationship with F & M Bank in his personal capacity. On that date, Frost signed documents to open an individual checking account with F & M Bank.

12. During February 2018, representatives of F & M Bank visited the business premises used by Frost-Tec.

13. Frost represented to F & M Bank that F & M Bank could receive a lien on the business assets. Frost states that he does not recall the term "first lien" being discussed. Frost states that at the time the F & M Bank loan was first funded, he believed F & M Bank would have the only lien.

14. On or about May 15, 2018, Frost, acting on behalf of K & F, initiated a banking relationship with F & M Bank. On that date, Frost executed a Certificate and Authority for Banking Transactions for F & M Bank on behalf of K & F. On such documents, Frost was identified as the sole member of K & F.

15. Frost provided a detailed listing of business property and equipment that he represented were the property of Frost-Tec, and which would serve as collateral for loans to be made by F & M Bank.

16. On March 1, 2018, Frost executed a Commercial Security Agreement granting F & M Bank a security interest in all business property of Frost-Tec.

17. On March 1, 2018, and subsequent dates in 2018, Frost-Tec obtained various loans from F & M Bank, ultimately reaching a cumulative total of approximately $170,623.98 owed to F & M Bank, with interest continuing to accrue.

18. On March 7, 2018, F & M Bank filed a UCC financing statement against all business property of Frost-Tec.

19. On October 25, 2018, K & F, Frost-Tec, and Frost executed numerous documents allegedly to provide security interests to Neal Frost (the Defendant's father) and K & F. These actions were unknown to F & M Bank at the time. These documents included the following:

    a. A promissory note executed on behalf of K & F and Frost-Tec, signed by Frost on behalf of both, to Neal Frost, jointly promising to pay $600,000 to Neal Frost.

    b. Security agreements executed on behalf of K & F and Frost-Tec, signed by Frost on behalf of both, allegedly granting a security interest to Neal Frost in all personal property of K & F and Frost-Tec.

    c. Personal guaranty of Frost to Neal Frost.

    d. Deed of trust of K & F to Neal Frost regarding certain real estate located in Falls City, Nebraska.

20. On November 1, 2018, Neal Frost filed a UCC financing statement claiming to have a lien on all assets of Frost-Tec.

21. On December 6, 2018, Frost-Tec received its final loan from F & M Bank, for repairs to a welder "to be paid by an insurance settlement". This loan was guaranteed by Frost, as were the other loans to Frost-Tec.

22. On January 15, 2019, Frost provided to F & M Bank a balance sheet for Frost-Tec, signed by Joel Frost, which lists machinery and equipment represented to be the property of Frost-Tec.

23. Frost filed a Chapter 13 petition on March 20, 2019 at Case No. BK19-40095. Frost's Petition was dismissed on November 8, 2019.

24. Frost-Tec filed a Chapter 7 petition on June 28, 2019 at Case No. BK19-41118. Frost-Tec's bankruptcy was closed on November 12, 2019.

25. Neal Frost, Frost-Tec, and K & F were "insiders" of Frost within the meaning of 11 U.S.C. § 101.

26. Frost-Tec's debts to F & M Bank, guaranteed by Frost, consist of the following:

| Account No./Description | Amount |
|---|---|
| 49CL/1995 Caterpillar Forklift | $ 7,442.84 |
| 48CL/Additional Operating Capital | $ 31,376.67 |
| 01CL/Welder Repair | $ 10,201.25 |
| 77CL/Frost-Tec 2018 Operating Expenses | $ 51,808.10 |
| 8621/General Account | $ 21,885.90 |
| 8720/Payroll Account – Overdraft | $ 47,909.22 |
| TOTAL: | $170,623.98 |

In addition to the facts that the parties agreed upon in their pretrial statement, the Court finds that the evidence at trial revealed the following additional uncontroverted facts:

27. When Defendant signed the F & M loan documents, he intended to give F & M a first lien on the equipment collateral specifically described in the balance sheet he provided to the bank (Fil. #41).

28. When Defendant signed the loan documents for the loan from Neal Frost, he did not intend to grant Neal Frost a lien prior to F & M's lien in the equipment collateral described in the balance sheet. Instead, he intended to give Neal Frost a junior lien on that list of equipment and a first lien on everything else, including the real estate owned by K & F.

29. No evidence was presented as to the resolution, if any, of the dispute between Neal Frost and F & M Bank, nor was any evidence presented as to the deficiency balance

remaining due to F & M. The parties did appear to agree, however, that some undefined sum remains due and owing to F & M.

## *DISCUSSION*

The bank relies on § 523(a)(2) of the Bankruptcy Code, which

> excepts from discharge debts arising from various forms of fraud. Subparagraph (A) bars discharge of debts arising from "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition." Subparagraph (B), in turn, bars discharge of debts arising from a materially false "statement . . . respecting the debtor's . . . financial condition" if that statement is "in writing."

*Lamar, Archer & Cofrin, LLP v. Appling*, ___ U.S. ___, 138 S. Ct. 1752, 1758–59 (2018).

The bank seeks to establish the elements of § 523(a)(2)(A), which prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]"

To exclude such a debt from discharge, the creditor must show:

> that a debtor (1) made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of deceiving the creditor, (4) who justifiably relied on the representation, and which (5) proximately caused the creditor damage. *Heide v. Juve (In re Juve)*, 761 F.3d 847, 851 (8th Cir. 2014). Exceptions to discharge are to be construed narrowly. *Reshetar Sys., Inc. v. Thompson (In re Thompson)*, 686 F.3d 940, 944 (8th Cir. 2012).

*Hernandez v. General Mills Fed. Credit Union (In re Hernandez)*, 860 F.3d 591, 602 (8th Cir. 2017).

The bank alternatively argues that the debt should be excepted under § 523(a)(2)(B). Under that subsection, a creditor must prove, by a preponderance of the evidence, that the debtor obtained money by (1) use of a statement in writing that was materially false; (2) that pertained to his or his business's financial condition; (3) on which the plaintiff reasonably relied; and (4) that the debtor made with the intent to deceive the plaintiff. *Jacobus v. Binns (In re Binns)*, 328 B.R. 126, 130 (B.A.P. 8th Cir. 2005); *Northland Nat'l Bank v. Lindsey (In re Lindsey)*, 443 B.R. 808, 813 (B.A.P. 8th Cir. 2011).

Under either subsection of 523(a)(2), two material factual issues make themselves glaringly apparent: the Defendant's intent in making a misrepresentation and the creditor's reliance.

Fraudulent misrepresentation requires that the representation is accompanied by an element of scienter: the maker of the representation must (a) know or believe that the matter is not as he represents it to be, (b) lack confidence in the accuracy of his representation, or (c) know that he

does not have the basis for the representation. *Hernandez v. Sulier (In re Sulier)*, 541 B.R. 867, 879 (Bankr. D. Minn. 2015). To amount to fraud, a statement must be made deliberately and intentionally with the intention and purpose of deceiving. *Lindau v. Nelson (In re Nelson)*, 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006). When assessing the debtor's knowledge that the representation was false, the court must consider the debtor's knowledge and experience. *Merchants Nat'l Bank v. Moen (In re Moen)*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) (citing *Federal Trade Comm'n v. Duggan (In re Duggan)*, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)). The knowledge requirement can be satisfied with a finding that the debtor recklessly disregarded the truth by making the false representation under circumstances where he should have known it to be false. *Id.*

"The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." *Moen*, 238 B.R. at 791 (quoting *Moodie-Yannotti v. Swan (In re Swan)*, 156 B.R. 618, 623 n.6 (Bankr. D. Minn. 1993)). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *Id.* (quoting *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987)). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. *Id.* The key is whether the debtor knew the statement to be false at the time he made it. "Even if a false statement is made, no fraud exists unless the maker knows the statement is false at the time the statement is made." *Nelson*, 357 B.R. at 513.

The Defendant testified that because F & M Bank required K & F's loan with Frontier Bank to be paid off before agreeing to lend money to Frost-Tec, the Defendant's father, Neal Frost, agreed in February or March 2018 to provide the funds for the Frontier Bank pay-off with the understanding the Defendant would repay him. He further testified that F & M's representatives were made aware of this during discussions between Frost and F & M about making the initial loan to Frost-Tec. F & M Bank's witnesses did not contradict that testimony. The Defendant explained that the documents memorializing the arrangement with his father were prepared with a date of March 1, 2018, but were not signed until October because his father was undergoing cancer treatment at the time. On its face, the evidence does not establish a knowingly false or reckless statement by the Defendant. In fact, the evidence failed to even show that F & M Bank did not actually receive a first lien on the assets of Frost-Tec as required by the loan documents.[1] Accordingly, Defendant did not intend to make a misrepresentation regarding F & M Bank's lien priority or the assets upon which it would receive a lien.[2]

---

[1] The evidence clearly showed that the financing statement filed by F & M Bank was filed before the financing statement of Neal Frost, and well before any security interest was granted to Neal Frost. The parties indicated that Neal Frost may have asserted a prior security interest (perhaps through a subrogation theory based on his payoff of an earlier loan by another bank), but no such evidence was presented. Further, no evidence was presented from the state court proceedings related to the priority dispute between Neal Frost and F & M. Thus, it is unclear whether a misrepresentation, intentional or not, was made at all.

[2] The bank also appears to argue that Defendant made a misrepresentation with respect to granting the bank a blanket lien on other equipment not specifically listed in Frost-Tec's balance

Document Page 7 of 8

Likewise, the bank must show it justifiably relied[3] on the Defendant's alleged misrepresentations. To meet this burden,

> a creditor may rely on a representation of fact even though he might have discovered the falsity of the representation if he had investigated the matter. *Islamov v. Ungar (In re Ungar)*, 633 F.3d 675, 679 (8th Cir. 2011) (citing *Field v. Mans*, 516 U.S. 59, 70-71, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995)). However, creditors may not "turn a blind eye where a patent falsity could be determined by a cursory examination or investigation." *Id.* (quoting *Field*, 516 U.S. at 71, 116 S. Ct. 437) (internal quotations and citations omitted). "In other words, if there are any warning signs . . . in the nature of the transaction, or in the debtor's conduct or statements, the creditor has not justifiably relied on his representation." *Guske v. Guske (In re Guske)*, 243 B.R. 359, 363-64 (8th Cir. BAP 2000). The question of whether reliance is justifiable is subjective and dependent upon the qualities and characteristics of the particular creditor, and the circumstances of the particular case. *In re Ungar*, 633 F.3d at 679. Courts may consider the following factors in determining whether a creditor's reliance was justifiable:
>
>> (1) the parties' previous business dealings; (2) events which might have put the creditor on notice that the representations were not well-founded; (3) whether a simple inquiry or request for additional information might have revealed the misinformation; (4) the course of dealings between the creditor and the debtor; and (5) information commonly known about the particular industry.
>
> *Kassebaum v. Smith (In re Smith)*, 591 B.R. 741, 750 (Bankr. D. Minn. 2018) (quoting *Hernandez v. Sulier (In re Sulier)*, 541 B.R. 867, 879 (Bankr. D. Minn. 2015)). A "victim of fraud is not justified in relying on a representation, and a duty to investigate arises, where the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived." *Hernandez v. Gen. Mills Fed. Credit Union (In re Hernandez)*, 860 F.3d 04 (8th Cir. 2017).

*Takuski v. Kurtz (In re Kurtz)*, 604 B.R. 549, 559-60 (Bankr. D. Neb. 2019).

In the present case, there was testimony by the Defendant and the bank representatives that the bank was aware of the Defendant's involvement in both K & F and Frost-Tec and that Frost-Tec was intended to be a restructuring of K & F. There is also evidence the bank was told that Neal

---

sheet that apparently was never transferred from K & F to Frost-Tec. However, no such equipment was ever identified at trial.

[3] "Justifiable reliance" is the appropriate standard to apply under § 523(a)(2)(A), and is a lower standard than "reasonable reliance," entailing no duty to investigate. *Treadwell v. Glenstone Lodge, Inc. (In re Treadwell)*, 423 B.R. 309, 314 (B.A.P. 8th Cir. 2010) (citing *Field v. Mans*, 516 U.S. 59 (1995)).

Frost would be paying off the K & F obligations to Frontier Bank, but according to both the Defendant and the loan officer, they did not discuss the effect of this or how it might alter F & M's security position. The bank representatives testified that they essentially relied on statements from the Defendant, the Frost-Tec balance sheet (including the specific listing of equipment), and their inspection in deciding to make the loan. Specifically, the testimony was that the bank was basing its lending decisions on the perceived value of the listed collateral that was available to secure its loan as opposed to the financial performance of the borrower.

Since the bank was unequivocal that it required the prior loan made to K & F to be paid off before it would loan money to Frost-Tec, it is clear that the bank was aware the Frost-Tec assets were coming from K & F and that another entity could claim a lien on the assets. So, the bank's primary concern was that the prior security interest be released. The evidence failed to disclose whether the bank required, requested, or received any documentation that the prior loan was paid off *and* that the prior security interest in the K & F assets was released. The record also fails to disclose whether the bank required documentation of the transfer of the equipment from K & F to Frost-Tec. Absent some evidence that the bank required such documentation, the Court cannot find that the bank justifiably relied on boilerplate representations in its loan documents as to lien priority, particularly when the bank was adamant about the need to pay off the prior loan and its reliance upon the specific property listing.

The bank also argues that its loan documents prohibit encumbering its collateral even with a junior lien. At trial, Defendant testified that he did not intend to give anyone else a lien of Frost-Tec's assets. In fact, he did not even give a security interest to Neal Frost until October of 2018, which was many months after he granted the bank its lien. While the bank's loan documents do apparently prohibit the granting of that later lien, at best, this argument amounts to a breach of contract by Defendant.[4] No evidence was presented to establish that Defendant intended to deceive F & M Bank when he signed the loan documents. There also was no evidence presented to show that F & M Bank performed even basic due diligence when making subsequent loans to Defendant.

IT IS ORDERED: For the foregoing reasons, the Court finds for the Defendant and against the Plaintiff, and the Complaint should be dismissed. Separate judgment to be entered.

DATED: November 18, 2020.

BY THE COURT:

/s/Thomas L. Saladino
Chief Judge

Notice given by the Court to:
*Matthew V. Rusch
John D. Rouse
U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.

---

[4] Debts arising out of contract breaches are not excepted from discharge in bankruptcy. *Lindau v. Nelson* (*In re Nelson*), 357 B.R. 508, 514 (B.A.P. 8th Cir. 2006).